UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIMBERLY THIRKIELD, )<br>)<br>Plaintiff, )<br>) CIVIL ACTION<br>v. )<br>) NO. 12-cv-40110-TSH<br>NEARY & HUNTER OB/GYN, LLC, )<br>DR. TODD HUNTER, FAYE HUNTER, )<br>KATHY CREGG and PAUL RIETH )<br>)<br>Defendants. )<br>) | |

## ORDER AND MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 68)

**January 2, 2015**

HILLMAN, D.J.

### Introduction

This is an action brought by Kimberly Thirkield against Defendants Neary & Hunter OB/GYN, LLC, Dr. Todd Hunter, Faye Hunter, Kathy Cregg and Paul Rieth for violations of federal and state anti-discrimination laws. Plaintiff alleges that she was sexually harassed in the workplace (Counts I, III and V), that she was retaliated against for reporting the sexual harassment (Counts II, IV, VI, VIII, X, and XII), and that certain defendants aided and abetted the harassment and retaliation (Counts VII, IX, XI). For the reasons that follow, the Defendants' motion for summary judgment is ***granted*** as to all claims except Count V.

### Background

This lawsuit arises out of alleged sexually harassing conduct by Defendant Faye Hunter

toward other employees of Neary & Hunter OB/GYN. Neary & Hunter OB/GYN is small, family-run obstetrics and gynecology practice located in Worcester, Massachusetts. The practice is owned and operated by Dr. Brenda Neary and Defendant Dr. Todd Hunter ("Dr. Hunter"). Plaintiff Kimberly Thirkield ("Plaintiff") worked as a medical assistant at Neary & Hunter from January 2010 to April 2012. Defendant Faye Hunter ("Faye" or "Faye Hunter") is the daughter of Dr. Hunter and worked as a receptionist at Neary & Hunter from January 2011 to August 2013. Defendants Kathy Cregg ("Cregg") and Paul Rieth ("Rieth") are the Office Manager and Practice Manager at Neary & Hunter, respectively. Their job responsibilities include developing and implementing office policies and procedures, as well as handling employee-related disputes, discipline, or other issues. Julie Hunter—the wife of Dr. Hunter and mother of Faye Hunter— also works as a medical assistant at Neary & Hunter, although she is not a named party in this lawsuit. Cregg is Julie Hunter's sister and Faye's aunt. Neary & Hunter OB/GYN additionally employs a handful of other medical assistants, medical secretaries, and/or other staff.

Plaintiff's complaint asserts that on multiple occasions, Faye Hunter sexually harassed Plaintiff by groping her and making sexualized comments toward her. Plaintiff also alleges that Faye engaged in similar conduct toward other employees of Neary & Hunter, and that Plaintiff found this offensive. Plaintiff informed her supervisor, Defendant Cregg, of Faye's conduct for the first time on February 29, 2012. Plaintiff provided a handwritten list to Cregg that described the following incidents:

> 1) On January 25, 2012, while Plaintiff was in the office phone room, Faye Hunter grabbed Plaintiff's breasts and said "oh, you know you want it." Plaintiff backed away and told Faye Hunter to stop and that such conduct was inappropriate.

> 2) On February 12 or 13, 2012, while Plaintiff was in the office lunch room, Faye Hunter grabbed Plaintiff's breasts. Plaintiff again backed away and told Faye Hunter to stop and that such conduct was inappropriate. Faye Hunter told Plaintiff to "lighten up."

3) On February 22, 2012, Plaintiff witnessed Faye Hunter grab the breasts of another employee, Tara Doherty, in the office phone room. Doherty was laughing and commented "it doesn't bother me."

4) On February 29, 2012, while Plaintiff was just outside the office lunchroom, Faye Hunter placed her left hand on Plaintiff's buttocks, winked at Plaintiff, and walked away.

After Plaintiff provided these details to Cregg, Cregg informed Rieth of Plaintiff's report. Cregg and Rieth subsequently met with Plaintiff to discuss her allegations against Faye. During that meeting, Cregg and Rieth apologized to Plaintiff, stated that Faye's conduct was unacceptable in an office setting, assured Plaintiff they would speak with Faye about the inappropriate touching, and stated that they would follow up with Plaintiff after the meeting with Faye. Plaintiff requested that her complaint be kept confidential because she was fearful of being chastised by other employees in the small family office. At the end of the meeting, Plaintiff expressed her gratitude to Cregg and Rieth for addressing her concerns.

At some point during February 2012, medical assistant Alexandra Cook was also made uncomfortable by Faye's touching and sexualized comments. In late February, Cook reported Faye's conduct to Cregg, although the parties dispute the precise date that this occurred. In hopes of showing that Neary & Hunter management should have acted to stop Faye's touching earlier, Plaintiff claims that Cook first reported Faye's sexually harassing conduct several days before February 29, 2012. The Defendants, as well as Cook herself, assert that Cook's meeting with Cregg occurred on February 29, 2012—the same day that Plaintiff reported Faye.

On March 2, 2012, Cregg and Rieth met with Faye regarding the incidents of alleged touching. The parties disagree about the details of that meeting, and about whether Cregg and Rieth followed up with Plaintiff following the meeting with Faye. It is undisputed that Cregg and Rieth told Faye that touching other employees in the office was inappropriate, and that Plaintiff did not experience any further inappropriate touching. However, Plaintiff claims that Faye's

3

conduct did not stop, because she witnessed Faye grab Alexandra Cook's breasts again in late March. Cook denies that the incident in late March ever occurred.

Although Plaintiff was not touched again by Faye after she reported the harassment, things at work did not improve. Plaintiff says that after she told her supervisors about Faye's conduct, other employees began to ignore her. Specifically, Plaintiff alleges that Faye Hunter, Julie Hunter, and employees Tara Doherty and Mary Jo Peters began giving her the "cold shoulder" in retaliation for reporting Faye's sexually harassing conduct. Plaintiff makes no claim that she was disciplined, lost pay, or lost benefits as a result of reporting Faye's touching. However, Plaintiff alleges that the work environment was so hostile that she had no choice but to leave Neary & Hunter.

On April 2, 2012, Plaintiff met with Dr. Neary to resign. Plaintiff initially indicated to Dr. Neary that one of the reasons for her resignation was that she was not getting enough hours. Plaintiff went on to explain, however, that another motivation for her resignation was the sexual harassment by Faye and the "cold shoulder" she experienced from other employees after reporting Faye's conduct to Cregg and Rieth. Prior to Plaintiff's resignation, neither Dr. Neary nor Dr. Hunter were aware of Plaintiff's allegations against Faye.

Based on the circumstances leading to her resignation, Plaintiff filed a complaint against Neary & Hunter OB/GYN with the Equal Employment Opportunity Commission on April 30, 2012. Plaintiff filed the instant action against the Defendants on August 31, 2012.

## **Discussion**

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 provides that the court shall grant summary judgment if the moving party shows, based on the materials in the record, "that there is no genuine issue as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute precludes summary judgment if it is both "genuine" and "material." *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986). An issue is "genuine" when the evidence is such that a reasonable factfinder could resolve the point in favor of the non-moving party. *Morris v. Gov't Dev. Bank*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" when it might affect the outcome of the suit under the applicable law. *Id*.

The moving party is responsible for "identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1968). It can meet its burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'" *Rakes v. U.S.*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (quoting *Celotex*, 477 U.S. at 4). Once the moving party shows the absence of any disputed material fact, the burden shifts to the non-moving party to place at least one material fact into dispute. *See Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (discussing *Celotex*, 477 U.S. at 325). When ruling on a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002). However, the court should not "credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective." *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007).

*Sexual Harassment Claims: Counts I, III, and V*

Plaintiff asserts three counts of sexual harassment. Count I alleges violations of Title VII of the Civil Rights Act of 1964 by Neary & Hunter OB/GYN. Count III alleges violations of the Massachusetts anti-discrimination statute, M.G.L. c. 151B, by Neary & Hunter OB/GYN. Count

V alleges violations of M.G.L. c. 151B by Faye Hunter as an individual. Unlike Title VII, which only provides for employer liability for claims brought under the statute, 151B does allow claims against individual employees. *See Thomas v. EDI Specialists*, 437 Mass. 536, 542, 773 N.E.2d 415 (2002) (citing *Beaupre v. Cliff Smith & Assocs.*, 50 Mass. App. Ct. 480, 490-91, 738 N.E.2d 753 (2000)). For this reason, Plaintiff's 151B claim against Faye Hunter as an individual is discussed separately from the claims against Neary & Hunter OB/GYN.

*Title VII and 151B claims against Neary & Hunter OB/GYN*

Title VII and M.G.L. c. 151B protect employees from sex-based employment discrimination, including sexual harassment. *See Gerald v. Univ. of P.R.*, 707 F.3d 7, 17 (2013); *Lowery v. Klemm*, 446 Mass. 572, 574, 845 N.E.2d 1124 (2006). Plaintiff correctly notes that the showing required under Title VII is "essentially analogous" to that of 151B.[1] *Bourbeau v. City of Chicopee*, 445 F. Supp. 2d 106 (D. Mass 2006). Plaintiff's claims against Neary & Hunter OB/GYN, brought under the theory of hostile work environment,[2] can succeed only if she is able to show the following six requirements:

> (1) that she is a member of a protected class;
> (2) that she was subjected to unwelcome sexual harassment;
> (3) that the harassment was based upon sex;
> (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment;
> (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and
> (6) that some basis for employer liability has been established.

---

[1] For this reason, courts in this district often use a single analysis for discrimination claims brought under state and federal law. *See Ruffino v. State Street Bank and Trust Co.*, 908 F. Supp. 1019, 1047 n.50 (D. Mass. 1995) (finding that the same result in Plaintiff's discrimination claim was compelled under state and federal law). Further, the Massachusetts Supreme Judicial Court has stated that it is their practice "to apply Federal case law construing the Federal anti-discrimination statutes in interpreting G.L. Ch. 151B." *Wheatley v. Am. Tel. & Tel. Co.*, 418 Mass. 394, 397, 636 N.E.2d 265 (1994).

[2] The First Circuit has recognized multiple varieties of claims for discrimination based on sexual harassment, including hostile work environment, quid pro quo, and retaliation. *Forrest v. Brink Inter. Payroll Co., LLP*, 511 F.3d 225, 228 n.2 (1st Cir 2007).

*Ponte v. Steelcase Inc.*, 741 F.3d 310, 319-20 (1st Cir. 2014). Defendants concede that as a woman, Plaintiff is a member of a protected class, but dispute that Plaintiff has produced evidence sufficient to survive summary judgment on the remaining elements of the claim. I have little trouble finding that a reasonable factfinder could conclude that Plaintiff has met her burden on the second, third, and fifth elements. In her deposition, Plaintiff testified that on two occasions within two weeks, Faye Hunter walked up in front of Plaintiff, used two hands to grab both of Plaintiff's breasts, and said "oh you know you want it." *See* Thirkield Dep. 47:13-48:2, 57:20-23. Plaintiff stated she was horrified by this conduct and told Faye to stop. *Id.* Plaintiff also testified that on a third occasion shortly thereafter, Faye Hunter grabbed Plaintiff's buttocks and winked at Plaintiff. *Id.* at 48:3-5. Plaintiff was offended enough by Faye's conduct that she reported it to Cregg and Rieth following the third incident of inappropriate touching—all of which occurred over the course of one month. *Id.* at 64:19-65:19. The testimony of Alexandra Cook supports Plaintiff's story. Cook testified that Faye Hunter also touched Cook inappropriately more than three times, *see* Cook Dep. 22:4-10, and that Cook remembers Faye touching Plaintiff "on the bum." *Id.* at 29:13-20. Cook also found Faye Hunter's conduct offensive, and reported it to Cregg and Rieth. *Id.* at 27:10-28:14. This evidence is sufficient for a reasonable juror to conclude that Plaintiff was subjected to unwelcome harassment based on her gender, and that Faye Hunter's conduct was both objectively and subjectively offensive.

The fourth and sixth requirements of the prima facie claim for sexual harassment are worthy of more extensive discussion. Defendants rest much of their motion for summary judgment on the argument that Faye Hunter's conduct was not severe and pervasive. It is true that this requirement constitutes the "real bone of contention" in many sexual harassment claims. *See Gerald*, 707 F.3d at 18. As the First Circuit has observed, often "the real question is typically

whether the bad acts taken in the aggregate are sufficiently severe or pervasive to be actionable." *Noviello v. City of Boston,* 398 F.3d 76, 84 (1st Cir. 2005). However, I find that Plaintiff has raised a material fact question regarding this element of the claim.

There is "no mathematically precise test" that a reviewing court employs to answer the question of severity and pervasiveness, "but several factors, none of which are individually determinative, are relevant: the severity of the conduct, its frequency, whether it is physically threatening or not, and whether it interfered with the victim's work performance." *Gerald*, 707 F.3d at 18 (citing *Bhatti v. Trustees of Boston Univ.,* 659 F.3d 64, 73–74 (1st Cir. 2011)). The First Circuit's recent discussion of the "severe and pervasive" requirement in *Gerald v. University of Puerto Rico* is instructive. 707 F.3d 7 (1st Cir. 2013). In *Gerald*, the court found that three incidents of breast-grabbing accompanied by offensive sexual come-ons were enough to qualify as "severe and pervasive" for summary judgment purposes. 707 F.3d at 18-19. In reaching that determination, the court observed that a mere "single act of harassment may, if egregious enough, suffice to evince a hostile work environment," *id.* at 18, and that "behavior like fondling, come-ons, and lewd remarks is often the stuff of hostile work environment claims." *Id.* (quoting *Billings v. Town of Grafton*, 515 F.3d 39, 48 (1st Cir. 2008)). Given this precedent, Defendants' argument that Faye Hunter's harassing conduct was "de minimis" is unavailing.

Plaintiff testified that Faye Hunter groped Plaintiff's breasts or buttocks on three occasions, and that she witnessed Faye inappropriately touch employees at least two other times. *See* Thirkield Dep. 47:13-48:5, 50:16-20, 57:8-18. The groping was accompanied by sexualized comments such as "oh, you know you want it." *Id.* Cook corroborates much of Plaintiff's version of the story, and adds that Faye Hunter would tell employees, including Plaintiff, to "look at my

8

boobs." *See* Cook Dep. 30:18-19. Both Plaintiff and Cook were concerned enough about their ability to work in such an environment that they reported the conduct to Cregg and Rieth. *See* Thirkield Dep. 64:19-65:19; Cook Dep. 27:10-28:14. Taken together, and viewing the evidence in the light most favorable to the non-moving party, a reasonable factfinder could conclude that the harassment experienced by Plaintiff was sufficiently severe and pervasive for purposes of her claim.

However, the sixth element of Plaintiff's sexual harassment claim against Neary & Hunter is another matter. "To establish employer liability for a non-supervisory co-employee, a plaintiff must demonstrate that the employer knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate action." *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 401 (1st Cir. 2002) (quoting *White v. N.H. Dept. of Corr.*, 221 F.3d 254, 261 (1st Cir. 2000)) (internal quotations omitted); *see also Forrest*, 511 F.3d at 231 (stating that liability only attaches where "the employer, after receiving notice, fails to take prompt and appropriate ameliorative action"). Plaintiff asserts that Cregg and Rieth's efforts to address her harassment complaint were not sufficient to shield Neary & Hunter from liability.

Plaintiff first argues that Cregg and Rieth knew about Faye Hunter's sexual harassment prior to Plaintiff's complaint, but did nothing to stop it. This claim is based entirely on a tenuous inference derived from a misreading of the record. Plaintiff claims Alexandra Cook reported Faye Hunter's sexually harassing conduct several days prior to February 29, 2012. This assertion is based on the fact that February 29, 2012 was a Wednesday, that Cook testified she reported the conduct to Cregg during a conversation in which they were discussing the level of professionalism to be used when answering phones, *see* Cook Dep. 27:10-22, and that Cook only worked in the phone room on Thursdays. *See* Cook Dep. 54:15-18. Therefore, Plaintiff

9

concludes that Cook must have reported Faye Hunter's sexually harassing conduct the previous Thursday, February 23. This Court declines to draw that inference. There is no indication from Cook's deposition testimony that the conversation she had with Cregg about professionalism on the telephone occurred on a day in which Cook was assigned to the phone room. Cook was assigned to the phone room on Thursdays to cover for short staffing on that day, but worked as a medical assistant on the other days of the week. It is entirely possible that Cook and Cregg met about telephone professionalism on a day other than Thursday, and Plaintiff presents no direct evidence that the conversation happened on a Thursday.

Defendants, however, point to significant evidence in the record—including Cook's own deposition and affidavit, as well as the testimony of Cregg and Rieth—that states that Cook reported Faye's conduct on the same day that Plaintiff first reported it, February 29. *See* Cook Aff. ¶ 5; Rieth Dep. 41:9-13; Cregg Dep. 10:1-11. The assertion that Cook must have told Cregg about Faye's conduct on a Thursday simply because the report occurred during a meeting in which Cregg and Cook were discussing professionalism on the phone is not credible in light of the rest of the evidence in the record. *See Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 136 (1st Cir. 2013) (stating that for summary judgment purposes, the non-moving party's speculative version of events need not be accepted if blatantly contradicted by the record).

Next, Plaintiff argues that the response by Cregg and Rieth to Plaintiff's harassment complaint was insufficient to meet the "prompt and appropriate action" standard. "Determining what constitutes a 'prompt and appropriate' employer response to allegations of sexual harassment often requires the sort of case-specific, fact-intensive analysis best left to a jury." *Forrest*, 511 F.3d at 232. However, "summary judgment will lie when the undisputed facts show that a reasonable jury could not help but conclude that the employer's response was both timely

10

and appropriate." *Wilson v. Moulison N. Corp.*, 639 F.3d 1, 8 (1st Cir. 2011) (emphasis added); *see also Forrest*, 511 F.3d at 232 (finding that, given the undisputed facts in the record, no reasonable jury could find that employer's response to complaints of sexual harassment was not prompt and appropriate).

The following facts regarding Neary & Hunter's response to Plaintiff's complaint of sexual harassment are undisputed. On February 29, 2012, Plaintiff approached Cregg and made her first and only report about Faye's inappropriate touching. Thirkield Dep. 64:19-23. Following that meeting, Cregg met with Rieth to discuss the conversation she had with Plaintiff. Cregg Dep. at 11:19-13:21, Rieth Dep. at 42:6-17. Cregg and Rieth then met with Plaintiff a second time to discuss the harassment further. Thirkield Dep. at 66:3-6. In that meeting, Rieth apologized to Plaintiff and stated that Faye's conduct was unacceptable in an office setting. *Id.* at 66:9-17. Plaintiff asked Cregg and Rieth that her complaint be kept confidential, *see id*. at 70:8-11, because she did not want others in the office to know that it was Plaintiff who made a complaint about Faye. *Id.* at 71:12-13. Cregg and Rieth assured Plaintiff they would speak with Faye about the inappropriate touching. *Id.* at 66:9-17. On March 2, 2012, Cregg and Rieth met with Faye. They explained to Faye that touching other employees in the office was not appropriate and needed to stop. *See* Faye Hunter Dep. 15:6-16:15; Rieth Dep. 59:2-60:11; Cregg Dep. 16:1-22. Plaintiff was never touched again by Faye Hunter. *See* Thirkield Dep. 73:18-21.

In the face of this record, Plaintiff argues that she witnessed Faye touch Cook in late March, nearly a month after her complaint. The implication is that Cregg and Rieth's verbal reprimand was insufficient to stop the harassing conduct, and therefore was not an appropriate response. However, even taking Plaintiff's claim as true,[3] such a post hoc rationalization sheds

---

[3] The claim that Faye touched Cook in late March is contradicted by significant evidence in the record. Cook herself denies it ever occurred. Cook Aff. ¶ 7; Cook Dep. 35:10-15. This is noteworthy, given that Cook was willing to

11

no light on whether the Cregg and Rieth's response was "appropriate" at the time they acted.[4] Under the law of this Circuit, "an employer's disciplinary decision must be evaluated in real time; it cannot be evaluated in hindsight." *Wilson*, 639 F.3d at 8. *See also Newell v. Celadon Sec. Servs., Inc.*, 417 F. Supp. 2d 85, 97 (D. Mass. 2006) (stating that an appropriate response is one that is "reasonably calculated to prevent further harassment under the particular facts and circumstances of the case *at the time the allegations are made*") (emphasis added). Furthermore, the First Circuit and other courts regard oral reprimands as an appropriate intervention following an initial harassment complaint. *See Wilson*, 639 F.3d at 9 (stating that verbal warnings have "regularly been recognized as an appropriate starting point" in assessing employer liability).

The undisputed facts of this case are clear. Once Plaintiff made her first and only complaint, Cregg and Rieth met with her to discuss the harassment. Shortly thereafter, Cregg and Rieth met privately with Faye Hunter to address the complaint. Conscious of Plaintiff's request for confidentiality, they explained to Faye that touching other employees is inappropriate and must stop. Plaintiff presents only conclusory allegations to suggest that Cregg and Rieth did not take Plaintiff's complaint seriously. In light of these facts, no reasonable juror could find that Cregg and Rieth's verbal reprimand was an inappropriate response at the time Plaintiff made her complaint. *See Wilson*, 639 F.3d at 8 (affirming district court finding that no reasonable jury could conclude that employer's verbal warning was not an appropriate remedial response to plaintiff's initial harassment complaint).

---

report previous touching to her supervisors and testified about those instances in her deposition. Further, there is no evidence that this incident was witnessed by anyone other than Plaintiff, and Plaintiff never reported it to her supervisors. *See* Thirkield Dep. 73:3-10. Nevertheless, this Court must view the record in the light most favorable to Plaintiff for purposes of this summary judgment motion.

[4] Even if the Court were to consider the incident in late March in determining the appropriateness of Cregg and Rieth's response, the fact that Faye touched *Cook* is only minimally probative of whether Cregg and Rieth's response to *Plaintiff's* complaint was appropriate. Plaintiff indeed concedes that she herself never experienced inappropriate touching after she made her complaint.

Finally, Plaintiff argues that Cregg and Rieth's failure to take certain additional disciplinary and investigative steps indicates that their response was not "prompt and appropriate." Plaintiff suggests that Cregg and Rieth should have issued a formal reprimand, interviewed other employees about the allegations of Faye's behavior, and "followed up" with Plaintiff after their meeting with Faye. However, the fact that alternative options were available to Cregg and Rieth fails to establish that the actions they *did* take were not appropriate. Imposing discipline on employees "is not a rote exercise, and an employer must be accorded some flexibility in selecting condign sanctions for particular instances of employee misconduct." *Wilson*, 639 F.3d at 8; *see also Newell*, 417 F. Supp. 2d at 97 (finding that employer's response was prompt and appropriate even though employer did not fully investigate the misconduct).

There is no material fact question that would preclude summary judgment on the sixth requirement of Plaintiff's prima facie claim for sexual harassment against Neary & Hunter OB/GYN. Therefore, summary judgment is appropriate on Counts I and III.

*151B Claim against Faye Hunter*

Under M.G.L. c. 151B, sexual harassment is defined as "sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when . . . such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment." G.L. c. 151B, § 1(18). The Massachusetts Supreme Judicial Court (SJC) has stated that for a plaintiff to prevail, she must "show that the 'conduct alleged was sufficiently severe and pervasive to interfere with a reasonable person's work performance,' and that she found the conduct 'subjectively offensive.'" *Dahms v. Cognex Corp.*, 455 Mass. 190, 204-05, 914 N.E.2d 872 (2009) (internal quotations omitted). As discussed above, the analysis of sexual

harassment claims under 151B is essentially analogous to those under Title VII, and the SJC has stated it is their practice "to apply Federal case law construing the Federal anti-discrimination statutes in interpreting G.L. Ch. 151B." *Wheatley v. Am. Tel. & Tel. Co.*, 418 Mass. 394, 397, 636 N.E.2d 265 (1994). Therefore, I apply the same analysis of Plaintiff's claims against Neary & Hunter to the 151B claim against Faye Hunter, subject to one distinction: the Massachusetts anti-discrimination statute, unlike Title VII, allows for liability against individual employees. *See Thomas*, 437 Mass. at 542.

The prima facie case for sexual harassment described above is derived from Title VII cases in which the plaintiff brought claims against the employer, not an individual employee. It follows, then, that for purposes of Plaintiff's individual claim against Faye Hunter under 151B, she need not show the sixth requirement of the prima facie claim: a basis for employer liability. As Count V of Plaintiff's complaint is brought against Faye Hunter—not the employer—there is no need for Plaintiff to show a basis for Neary & Hunter's liability.

Applying the same analysis used for the claims against Neary & Hunter to the claim against Faye Hunter under 151B, Plaintiff has made out a prima facie claim for sexual harassment. There is sufficient evidence in the record for a reasonable factfinder to conclude that Plaintiff was subjected to unwelcome sexual harassment, that the harassment was severe and pervasive, and that the harassment was both objectively and subjectively offensive. Therefore, summary judgment with respect to Count V is not granted.

*Retaliation Claims: Counts II, IV, VI, VIII, X, XII*

Plaintiff's retaliation claims under both the federal and state anti-discrimination statutes are governed by the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). *See Jones v. Walgreen Co.*, 679 F.3d 9, 20-21 (1st Cir. 2012). Under

that analysis, plaintiff must first establish a prima facie claim of retaliation by showing: (1) she engaged in a protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action. *See Dixon v. Int'l Bhd. Of Police Officers*, 504 F.3d 73, 81 (1st Cir. 2007); *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 707, 947 N.E.2d 520 (2011). The term "protected activity" refers to action taken by the plaintiff "to protest or oppose statutorily prohibited discrimination." *Fantini v. Salem State Coll.*, 557 F.3d 22, 32, (1st Cir. 2009). *See also Mole v. Univ. of Mass.*, 442 Mass. 582, 591 n.13, 814 N.E.2d 329 (2004). Under Title VII, such activity includes "oppos[ing] any practice made an unlawful employment practice by [Title VII]," or "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under [the statute]".[5] 42 U.S.C. § 2000e-3. "Adverse action" in the retaliation context has been defined as an act "that could well dissuade a reasonable worker from making or supporting a charge of discrimination."[6] *Dixon*, 504 F.3d at 81.

Defendants concede that by reporting Faye Hunter's sexually harassing conduct, Plaintiff engaged in a protected activity under the anti-discrimination statutes. However, Defendants argue that there is no evidence in the record to suggest that Plaintiff has suffered an adverse employment action as a result of her decision to report the sexual harassment. I agree. To fulfill the adverse action element of the claim, a plaintiff must show that her employer took some objectively and materially adverse action against her because she opposed a practice forbidden by the anti-discrimination statutes. *Bhatti v. Trustees of Boston Univ.*, 659 F.3d 64, 73 (1st Cir.

---

[5] The definition of protected activity under Massachusetts law is similar. A plaintiff has engaged in protected activity if "he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under [the statute]." M.G.L. c. 151B § 4(4).

[6] Adverse action under the Massachusetts statute is defined as: "any action 'to coerce, intimidate, threaten, or interfere with' the plaintiff." *Dixon*, 504 F.3d at 81 (citing *Mole*, 442 Mass. 582, 591-92 n.14, 814 N.E.2d 329).

2011). *See also Booker v. Mass. Dept. of Public Health*, 612 F.3d 34, 43 (1st Cir. 2010); *MacCormack v. Boston Edison Co.*, 423 Mass. 652, 663, 672 N.E.2d 1 (1996). These "typically involve[] discrete changes in the terms of employment, such as 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Morales-Vallellanes v. Potter*, 605 F.3d 27, 37 (1st Cir. 2010) (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257 (1998)).

Plaintiff's claim rests on the assertion that after reporting Faye's conduct, other employees of Neary & Hunter gave Plaintiff the "cold shoulder" to such an extent that it constituted a constructive discharge. Unanimous authority holds, however, that a Plaintiff who is shunned or subjected to the silent treatment after reporting sexual harassment has not suffered a materially adverse employment action. *See, e.g.*, *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1216 (10th Cir. 2010) (finding that "the cold shoulder . . . though surely unpleasant and disturbing, [is] insufficient to support a claim of retaliation"); *Recio v. Creighton Univ.*, 521 F.3d 934, 940-41 (8th Cir. 2008) ("[R]eceiv[ing] the 'silent treatment' from other [employees] . . . is not materially adverse."); *Carpenter v. City of Torrington*, 100 F. App'x 858, 860 (2d Cir. 2004) (The "'silent treatment' . . . do[es] not amount to a "materially adverse change' in the terms and conditions of employment."); *Josephson v. Kimco Corp.*, 240 F. Supp. 2d 1000, 1010 (S.D. Iowa 2003) (finding that the silent treatment does not constitute an adverse employment action); *Hamilton v. RDI/Caesars Riverboat Casino LLC*, 179 F. Supp. 2d 929, 940 (S.D. Ind. 2002) (same); *Vital v. Nat'l Oilwell Varco*, No. CIV.A. H-12-1357, 2014 WL 4983485, at *42 (S.D. Tex. Sept. 30, 2014) (citing eight federal cases standing for the proposition that the silent treatment is insufficient to establish a hostile work environment).

Nor can Plaintiff shoehorn the "cold shoulder" into a materially adverse employment action by calling it a constructive discharge. To be sure, the First Circuit has recognized that a discharge is a paradigmatic example of an adverse employment action, *see Bergeron v. Cabral*, 560 F.3d 1, 7-8 (1st Cir. 2009), and that "[a] 'discharge' under [Title VII] may be constructive as well as a direct firing." *Hernandez-Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 47-48 (1st Cir. 1998). Thus, a constructive discharge, "under the right circumstances, can suffice as an adverse employment action for purposes of a retaliation claim." *Henricks v. White Cnty.*, No. 4:10 CV 42, 2012 WL 5948199, at *8 (N.D. Ind. Nov. 28, 2012). To withstand summary judgment, Plaintiff must point to evidence in the record showing "working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders,* 542 U.S. 129, 147, 124 S.Ct. 2342 (2004). "The standard to meet is an objective one, 'it cannot be triggered solely by an employee's subjective beliefs, no matter how sincerely held.'" *Gerald v. Univ. of P.R.*, 707 F.3d 7, 25 (1st Cir. 2013) (quoting *Roman v. Potter*, 604 F.3d 34, 42 (1st Cir. 2010)) (internal citations omitted).

Drawing all inferences in Plaintiff's favor, the evidence does not establish that the working conditions she experienced as a result of the "cold shoulder" were so intolerable that a reasonable person would be forced to resign. The constructive discharge standard is unequivocally difficult to meet. *See, e.g.*, *Henricks*, 2012 WL 5948199, at *8 ("The Seventh Circuit has generally reserved the label of 'constructive discharge' for situations involving egregious emotional torment and threats of physical harm.). At least one federal appeals court has found that conduct "which meets the definition of . . . an 'adverse employment action' is not necessarily sufficient to establish a constructive discharge because a constructive discharge requires a showing that the working conditions imposed by the employer are not only tangible or

17

adverse, but intolerable." *Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1270-71 (10th Cir. 2004). It would follow, then, that the "cold shoulder"—which itself is insufficient to establish an adverse employment action—would be insufficient to meet the more rigorous showing required for a constructive discharge.

Plaintiff cites no cases in which the "cold shoulder" or similar bullying conduct was sufficient to establish a constructive discharge. Indeed, this Court is only aware of cases that support the opposite proposition. *See Gawley v. Ind. Univ.,* 276 F.3d 301, 307, 316 (7th Cir. 2001) (finding that the "silent treatment" is "insufficiently severe to cause a reasonable person to quit"); *Hughes v. Wal-Mart Stores E. LP*, No. 1:11 CV 400, 2013 WL 3155400, at *5 (N.D. Ind. June 20, 2013) (finding that bullying plaintiff by clicking pens, honking horns, and popping gum was not sufficient to cause a reasonable person to quit their job); *Johnson v. Weld Cnty., CO*, No. 06-CV-02362-JLK, 2008 WL 4402247, at *11 (D. Colo. Sept. 24, 2008) (finding that teasing plaintiff in the workplace is not sufficient to meet the "stringent standard for constructive discharge").

The "cold shoulder" is insufficient under the law to establish an adverse employment action or a constructive discharge under Title VII and M.G.L. c. 151B. Therefore, I find there is no material fact dispute that would preclude summary judgment on Plaintiff's retaliation claims. Summary judgment is appropriate for Counts II, IV, VI, VIII, X, XII.

*Aiding and Abetting Claims: Counts VII, IX, XI*

Plaintiff asserts three claims for aiding and abetting discrimination under M.G.L. c. 151B against Dr. Todd Hunter, Kathy Cregg, and Paul Rieth, respectively. Section 4(5) of Chapter 151B prohibits "any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do

18

so." M.G.L. c. 151B § 4(5). Liability for aiding and abetting discrimination has been interpreted to extend to "individuals, including co-employees of the allegedly aggrieved employee." *Chapin v. Univ. of Mass. at Lowell,* 977 F.Supp. 72, 78 (D. Mass.1997). To prevail on her aiding and abetting claims Plaintiff must show that the Defendants:

> (1) []committed a wholly individual and distinct wrong . . . separate and distinct from the claim in main; (2) [] shared an intent to discriminate not unlike that of the alleged principal offender; and (3) [] knew of his or her supporting role in an enterprise designed to deprive [Plaintiff] of a right guaranteed [] her under G.L. c. 151B.

*Lopez v. Commonwealth,* 463 Mass. 696, 713, 978 N.E.2d 67 (2012) (internal quotations omitted). Plaintiff's aiding and abetting claims rely on the argument that Neary & Hunter management failed to adequately act on the complaints of sexual harassment. *See Chapin v. Univ. of Massachusetts at Lowell*, 977 F. Supp. 72, 80 (D. Mass. 1997) (predicting that the SJC would interpret an employer's failure to act on complaints of sexual harassment as an actionable claim for aiding and abetting under 151B). In support of this claim, Plaintiff marshals the same set of facts that she invokes to establish a basis for employer liability for the sexual harassment claims: that Cregg and Rieth knew of Faye Hunter's harassing conduct prior to February 29 but failed to stop it; and that Faye Hunter continued to engage in inappropriate touching after she had been told that such behavior was inappropriate. Additionally, Plaintiff points to the fact that Cregg and Rieth did not notify Dr. Neary, Dr. Hunter, or other employees of Neary & Hunter OB/GYN of Plaintiff's sexual harassment complaints.

However, Cregg and Rieth's decision to not share details of a sensitive complaint with others in the office does not suggest that their response was so inadequate that it amounted to aiding and abetting harassment.[7] Indeed, Plaintiff herself asked that her complaint be kept

---

[7] At the summary judgment hearing on November 6, 2014, Plaintiff took the opposite approach, arguing that Cregg and Rieth are liable for aiding and abetting *because they told others* in the office about Faye Hunter's harassment, which caused other employees to give Plaintiff the cold shoulder. Despite Plaintiff's attempt to have it both ways,

19

confidential, *see* Thirkield Dep. 70:8-11, and Plaintiff did not experience any sexual harassment after making her complaint. *See* Thirkield Dep. 73:18-21. For the same reasons I find that Plaintiff has not raised a material issue regarding a basis for employer liability, there is insufficient support in the record to establish that Cregg and Rieth were ineffective in their response to the allegations of sexual harassment. It follows, then, that Cregg and Rieth did not aid and abet the sexual harassment. I further note that Plaintiff has made no argument that Dr. Todd Hunter failed to act on the complaints of sexual harassment. Therefore, summary judgment is appropriate as to the aiding and abetting claims against Cregg, Rieth, and Dr. Hunter.

There is no material fact dispute that would preclude summary judgment on Plaintiff's aiding and abetting claims, and the defendants are entitled to a judgment as a matter of law on Counts VII, IX, and XI.

## Conclusion

For the reasons set forth above, the Defendants' motion for summary judgment is ***granted in part*** and ***denied in part***. Summary judgment is ***granted*** on Counts I, II, III, IV, VI, VII, VIII, IX, X, XI, XII. Summary judgment is ***denied*** on Count V.

SO ORDERED.

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**

---

this argument also fails. There is no indication in the record that Cregg and Rieth spoke to anyone other than Faye Hunter about the allegations made by Plaintiff. In fact, there is evidence that employees found out about the allegations through Faye Hunter herself—Faye's mother Julie, also a Neary & Hunter employee, testified that Faye told her about the allegations. *See* Julie Hunter Dep. 6:3:12. In any event, relief would not available for one who merely aids and abets the cold shoulder, because the cold shoulder is not "an act forbidden" under 151B. *See Malloch v. Town of Hanover*, No. 08-cv-10412-LTS, 2011 WL 487787, at *7 (D. Mass. Feb. 7, 2011) (finding that although the silent treatment may have been rude, it did not create a hostile work environment under M.G.L. c. 151B); *cf. Ahern v. Shinseki,* 629 F.3d 49, 59 (1st Cir. 2010) (stating that the federal anti-discrimination statute "does not create a general civility code for the workplace").